UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

LODUSKY MCCOWEN,

    Plaintiff,

    v.

TRIMAC TRANSPORTATION SERVICES (WESTERN), INC.,

    Defendant.

Case No. 14-cv-02694-RS

**ORDER GRANTING MOTION FOR CLASS CERTIFICATION**

**I. INTRODUCTION**

Plaintiff Lodusky McCowen is a truck driver who transports hazardous materials for defendant Trimac Transportation Services (Western), Inc. ("Trimac"). In this putative class action, McCowen contends Trimac is liable for a host of wage and hour violations related to its failure to pay drivers the compensation they are due and to provide meal and rest breaks. The putative plaintiff class consists of all current and former California-based employee truck drivers who worked for Trimac after June 10, 2010.[1] Trimac opposes certification only of the meal and rest break claims, and certain derivative claims to the extent they are based on the meal and rest break claims. Trimac argues its formal meal and rest break policy is legally compliant, and insists McCowen fails to identify a uniform counter-policy that would give rise to a common finding of liability. While Trimac may succeed ultimately in proving it has no uniform policies or practices that would support liability to the class, the issues McCowen raises are suitable for disposition on a class-wide basis, and the motion will therefore be granted.

---

[1] As discussed below, McCowen also seeks certification of four sub-classes.

## II. BACKGROUND[2]

Defendant Trimac is a for-hire motor carrier specializing in the transportation of bulk products. Trimac's truck drivers are responsible for delivering freight from one point to another. The drivers at issue here transport highly dangerous hazardous materials ("hazmat drivers"). Their work tasks include locating, inspecting, fueling, and maintaining vehicles, verifying loads, planning routes and trips, completing daily logs and shipping documents, completing other paperwork, using the onboard computer system, waiting for customers, waiting on loading and unloading of shipments, and waiting for dispatch.

Plaintiff Lodusky McCowen is one of Trimac's California-based truck drivers operating out of the terminal in Santa Fe Springs. McCowen raises a host of possible wage and hour violations. To begin, McCowen avers Trimac's compensation schemes did not fairly compensate drivers for all of the hours they worked. Specifically, from the beginning of the proposed class period until about June 29, 2014, Trimac maintained an Activity Based Pay ("ABP") system. Under that structure, drivers were paid for certain defined activities and time periods, as well as for the mileage they drove. McCowen argues, however, the system wrongfully deprived drivers of compensation for customer waiting time and dispatch waiting time.[3]

Next, as a matter of policy, McCowen asserts Trimac paid for driving time based only on computerized estimates of the mileage between locations. This practice allegedly deprived drivers

---

[2] The facts discussed below are generally drawn from the complaint. Trimac has also filed an unopposed request for judicial notice of its meal and rest break rules, class action settlements in related cases, the legislative history of California Assembly Bill 1513, and federal regulations relating to the transportation of hazardous materials. As these materials are consistent with Rule 201 of the Federal Rules of Evidence, Trimac's request is granted.

[3] Customer Waiting Time includes (1) the time drivers wait at customer facilities in advance of an appointment for delivery or pickup, (2) the time drivers wait at designated facilities for shipping or receiving personnel to accept or provide paperwork, and (3) the time drivers wait for customers to commence loading or unloading a shipment. Dispatch Waiting Time includes the time drivers wait for their dispatchers to provide in-vehicle instructions, the time drivers wait on-call between assignments, and the time drivers may wait while monitoring the onboard computer, staying near their trailers, being available promptly to accept reassignment, or using the trailers for personal errands.

of certain compensation they were owed for time spent driving in excess of the pre-determined mileage estimates, which were routinely less than the actual miles driven.  Trimac also allegedly failed to pay its drivers for "bobtail miles," the distance drivers traveled to home terminals at the end of their shifts.

Continuing, McCowen avers Trimac regularly failed to provide meal periods and rest periods as mandated by California law.  Correspondingly, Trimac failed to provide drivers with accurate, itemized work statements, or to maintain adequate employment records of all wages earned, hours worked, and meal breaks taken.  Finally, McCowen contends Trimac willfully and knowingly failed to pay drivers upon termination all accrued compensation, including the payment of minimum wage compensation and missed meal and rest periods compensation.

On behalf of himself and a putative class, McCowen asserts claims under California Labor Code ("Labor Code") sections 201–203, 221, 223, 226, 226.7, 227.3, 512, 1182.12, 1194, 1194.2, 1197, 1198, California's Unfair Competition Law, Cal. Bus. & Prof. Code §§ 17200 *et seq.*, Industrial Welfare Commission Wage Order ("IWC Wage Order") Nine, and the California Private Attorneys General Act, Labor Code §§ 2698 *et seq.*

### III. LEGAL STANDARD

Class actions are governed by Rule 23 of the Federal Rules of Civil Procedure, which represents much more than a mere pleading standard.  To obtain class certification, plaintiffs bear the burden of showing they have met each of the four requirements of Rule 23(a) and at least one subsection of Rule 23(b). *Zinser v. Accufix Research Inst., Inc.*, 253 F.3d 1180, 1186, *amended by* 273 F.3d 1266 (9th Cir. 2001). "A party seeking class certification must affirmatively demonstrate . . . compliance with the Rule." *Wal–Mart Stores, Inc. v. Dukes*, 131 S. Ct. 2541, 2551 (2011). Rule 23(a) provides that a district court may certify a class only if: "(1) the class is so numerous that joinder of all members is impracticable; (2) there are questions of law or fact common to the class; (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and (4) the representative parties will fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a). That is, the class must satisfy the requirements of numerosity,

commonality, typicality, and adequacy of representation to maintain a class action. *Mazza v. Am. Honda Motor Co., Inc.*, 666 F.3d 581, 588 (9th Cir. 2012).

If all four prerequisites of Rule 23(a) are satisfied, a court must also find that plaintiffs "satisfy through evidentiary proof" at least one of the three subsections of Rule 23(b). *Comcast Corp. v. Behrend*, 133 S. Ct. 1426 (2013). Relevant here is Rule 23(b)(3), which permits certification if a court finds that "questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." Fed. R. Civ. P. 23(b)(3). "[A] court's class-certification analysis must be 'rigorous' and may 'entail some overlap with the merits of the plaintiff's underlying claim.'" *Amgen Inc. v. Conn. Ret. Plans and Trust Funds*, 133 S. Ct. 1184, 1194 (2013) (quoting *Dukes*, 131 S. Ct. at 2551); *see also Mazza*, 666 F.3d at 588 ("Before certifying a class, the trial court must conduct a 'rigorous analysis' to determine whether the party seeking certification has met the prerequisites of Rule 23."). This "rigorous" analysis applies to both Rule 23(a) and Rule 23(b). *See Comcast*, 133 S. Ct. at 1432 (discussing how Congress included "addition[al] . . . procedural safeguards for (b)(3) class members beyond those provided for (b)(1) or (b)(2) class members (e.g., an opportunity to opt out)" and how a court has a "duty to take a 'close look' at whether common questions predominate over individual ones").

Nevertheless, "Rule 23 grants courts no license to engage in free-ranging merits inquiries at the certification stage." *Amgen*, 133 S. Ct. at 1194–95. "Merits questions may be considered to the extent—but only to the extent—that they are relevant to determining whether the Rule 23 prerequisites for class certification are satisfied." *Id.* at 1195. If a court concludes that the moving party has met its burden of proof, then the court has broad discretion to certify the class. *Zinser*, 253 F.3d at 1186.

## IV. DISCUSSION

The putative plaintiff class consists of "[a]ll current and former California-based, local, solo, intrastate and/or similarly-titled employee truck drivers of Defendant Trimac Transportation Services ("Western") Inc. at any time from June 10, 2010 up to and including the date judgment is

rendered in this action."[4]  Mot. for Class Cert. at 10:14–16.  McCowen also seeks certification of four sub-classes.  The "ABP Sub-Class" would consist of drivers employed by Trimac between June 10, 2010, and on or around June 29, 2014—the date Trimac moved to an hour-based compensation system.  The "ABP Rest Break Sub-Class" would consist of drivers employed between February 15, 2013, and on or around June 29, 2014.[5]  The "Meal and Rest Break Sub-Class" would consist of drivers employed between February 15, 2013, and the date judgment is rendered in this action.  The "Former Driver Sub-Class" would consist of all members of the plaintiff class who are no longer employed by Trimac.[6]

McCowen moves to certify claims for (1) failure to pay minimum wages for all hours worked, (2) failure to pay designated rates for all hours worked, (3) wages below the designated rate for actual miles driven, (4) failure to provide meal periods, (5) failure to provide rest periods, (6) failure to furnish accurate, itemized wage statements on a timely basis, (7) failure to pay all wages due at the time of termination of employment, (8) violation of California's Unfair Competition Law, and (9) civil penalties pursuant to the California Private Attorneys General Act.  McCowen styles the first three as "wage claims," the next two as "meal and rest break claims," and the last four as "derivative claims."

Trimac does not oppose certification of the wage claims.[7]  *See* Opp'n at 10:4–6.  Nor does

---

[4] "California-based" is further defined to mean employees "who had a residential address in California at any time during the Class Period" or "who were assigned to or associated with a branch or operating point located in California at any time during the Class Period."  Not. of Mot. and Mot. for Class Cert. at 2:13–17.  The phrase "assigned to or associated with an operating center or operating point" refers to "any and all employees listed in Trimac's databases in connection with a branch or operating point." *Id.* at 2:18–20.

[5] Meal and rest break claims prior to Feburary 15, 2013 were released by the putative class in earlier litigation.  *See* Def.'s Request for Judicial Notice ("RJN") Ex. 2.

[6] "Although there is no explicit requirement concerning the class definition in FRCP 23, courts have held that the class must be adequately defined and clearly ascertainable before a class action may proceed." *Wolph v. Acer Am. Corp.*, 272 F.R.D. 477, 482 (N.D. Cal. 2011) (internal quotation omitted).  "The class definition must be sufficiently definite so that it is administratively feasible to determine whether a particular person is a class member." *Id.*  The proposed class definitions meet this standard.  Trimac, moreover, does not quarrel with any portion of the class definitions.

[7] Trimac intends to invoke California Assembly Bill 1513, which provides an affirmative defense

it oppose certification of the derivative claims to the extent they are based on the wage claims. *Id.* at 23:7–10. Trimac does oppose certification of the meal and rest break claims on the grounds they fail to meet the "commonality" requirement of Rule 23(a)(2), the "typicality" requirement of Rule 23(a)(3), and the "predominance" and "superiority" requirements of Rule 23(b)(3).

### A. Rule 23(a) Requirements

#### 1. Numerosity

Numerosity is met if the potential class members are so numerous that the alternative—joinder of individual plaintiffs—is "impracticable." Fed. R. Civ. P. 23(a)(1). While there is no fixed number that satisfies the numerosity requirement, as a general matter, a class greater than forty often satisfies the requirement, while one less than twenty-one does not. *See Californians for Disability Rights, Inc. v. Cal. Dep't of Transp.*, 249 F.R.D. 334, 346 (N.D. Cal. 2008). Here, McCowen contends the class of local, solo drivers exceeds two hundred persons, though he does not address the numerosity of any of the sub-classes. Trimac, for its part, does not dispute that numerosity is met, and the record suggests the numerosity of the sub-classes is adequate. *See* Bringle Decl. ¶¶ 4–7. Accordingly, the mandate of Rule 23(a)(1) is satisfied.

#### 2. Commonality

Federal Rule of Civil Procedure 23(a)(2) requires some "questions of fact and law which are common to the class." The commonality requirement of Rule 23(a)(2) is construed less rigorously than the "predominance" requirement of Rule 23(b)(3). *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1019 (9th Cir. 1998). "[C]ommonality requires that the class members' claims 'depend upon a common contention' such that 'determination of its truth or falsity will resolve an issue that is central to the validity of each claim in one stroke.'" *Mazza*, 666 F.3d at 588 (quoting *Wal–Mart*, 131 S. Ct. at 2551) (internal alteration omitted). Stated differently, "the key inquiry is not whether the plaintiffs have raised common questions, 'even in droves,' but rather, whether

---

for an employer who pays four percent of the gross wages of its employees (or former employees) for any pay period they worked piece rate since July 2012.

class treatment will 'generate common *answers* apt to drive the resolution of the litigation.'" *Abdullah v. U.S. Sec. Assocs., Inc.*, 731 F.3d 952, 957 (9th Cir. 2013) (quoting *Wal-Mart*, 131 S. Ct. at 2551). This does not mean that every question of law or fact must be common to the class; rather, "all that Rule 23(a)(2) requires is a single *significant* question of law or fact." *Id.* (internal quotation marks omitted).

### a. Wage Claims

McCowen identifies a number of legal and factual issues common to each class member's wage claims, including "[w]hether Trimac's ABP compensation system failed to separately allocate pay for hours worked doing non-driving work tasks," and whether "by failing to separately allocate pay for [such] hours . . . Trimac's ABP compensation system failed to comport with California law." Mot. for Class Cert. at 12:12–16. Trimac does not contest that commonality is met with respect to these claims. Thus, because McCowen identifies common legal and factual issues that would drive the ultimate resolution of the wage claims, Rule 23(a)(2)'s requirements are accordingly met.

### b. Meal and Rest Break Claims

At the outset, McCowen identifies one question common to his meal and rest break claims—"whether Trimac fails to provide meal and rest breaks."[8] Mot. for Class Cert. at 12:18. He submits the class-wide evidence, including the deposition testimony of Trimac's corporate witnesses, the class member declarations, and the other documentary evidence garnered from Trimac's records, demonstrates that Trimac fails *uniformly* to provide meal and rest periods for all of its local drivers by, among other things, imposing unrealistic scheduling requirements upon its drivers, *see, e.g.*, McCowen Decl. ¶ 6; Fetters Decl. ¶ 5, failing to schedule meal breaks, *id.*, failing to notify drivers through on board equipment when breaks should be taken, *see, e.g.*, Jacobs Decl. ¶ 8, failing to confirm whether meal breaks are actually being provided, *see* Hall

---

[8] In his reply brief, McCowen suggests a few other legal and factual questions suitable for class-wide determination, including whether Trimac's corporate policies inhibited the taking of breaks, and whether Trimac failed to provide premium pay when meal breaks were not provided or taken.

Dep. at 265:11–25, failing to pay premiums when breaks are not provided, *see* Bringle Dep. at 105:10–19, and by authorizing non-compliant "on-duty" meal breaks, *see* Bringle Dep. at 92:24–93:5.

Trimac responds that McCowen fails to identify a uniform policy or practice that would give rise to a common finding of liability. To begin, Trimac argues the company has a legally compliant written break policy.[9] As such, Trimac submits McCowen must present "substantial evidence of a systematic" policy or practice to violate the formal policy. Opp'n at 13:20–25 (quoting *Brinker Rest. Corp. v. Superior Court*, 53 Cal. 4th 1004, 1051–52 (2012)). Only then, in Trimac's view, would the meal and rest break claims depend upon a common contention capable of classwide resolution.

On that score, Trimac argues the record is insufficient to establish that it uniformly deprived its employees of their breaks. Trimac suggests the evidence that it imposed "unrealistic scheduling requirements" is contradicted because many of its declarants had no problem taking their meal and rest breaks. Further, although three of McCowen's declarants testified their cargo both limited the places they could stop and required them to attend to their trucks, Trimac points out that its hazmat drivers do not haul explosives, and are therefore not subject to those heightened regulations. Next, Trimac argues that none of McCowen's declarants testified that Trimac

---

[9] Pursuant to that policy, Trimac requires each driver to complete a certification form each day indicating whether they took their meal and rest breaks, when they took them, and if they did not take them, whether they were provided to them and they simply chose not to take them for personal reasons, or whether they were prevented from taking them. Further, if a driver reports to his Branch Manager or Central Planning that he does not think he will be able to take one or more breaks, Trimac's policy is to change dispatch instructions if possible to allow the driver sufficient time and opportunity to take his breaks. When dispatch instructions cannot be changed, the Branch Manager is supposed to instruct payroll to pay the driver an hour of premium pay, and a specific pay code—"74"—was created for that purpose. Trimac also hired an employee to handle the collection, verification, and auditing of the daily break forms. When the forms are received by human resources, they are checked to make sure each on-duty driver submitted a form for each day. Trimac also instructs each branch randomly to select approximately five percent of its daily break forms and audit the sample against the electronic log data. If a driver is found to have misrepresented his breaks on his daily break form, he could be subject to discipline. If human resources finds any discrepancies in a daily break form, it is returned to the branch to review with the driver for correction, completion, and counseling, as appropriate. *See* Bringle Decl. ¶¶ 14–19.

authorizes "on-duty" meal breaks, fails to schedule breaks, fails to alert drivers they must take breaks, and fails to confirm breaks are taken. Lastly, Trimac maintains the record is devoid of evidence explaining why, in light of its formal policy against missing breaks, and its protocol for remedying such occurrences, McCowen's declarants failed to comply with the written policy. In the absence of a uniform answer to that specific question, Trimac insists individualized proof is required and commonality cannot be met.

McCowen's rejoinder is three-fold. First, he argues an adjudication of the merits is inappropriate at this stage of the case. More importantly, if Trimac is correct that he will be not be able to show the policies and practices he alleges even exist, McCowen submits the claims will fail, and they will do so on a class-wide basis.

Second, McCowen observes that Trimac ignores his class-wide theory that the formal policy is illusory because the company fails to pay for meal and rest breaks reported to have been missed. McCowen points out that Trimac's person most knowledgeable on meal and rest breaks admitted he could not recall a single instance when a driver was paid for missing a break. Bringle Decl. at 105:10–19. Given that Trimac maintains records of missed meal and rest breaks, McCowen insists the damages are easily ascertainable and certification is therefore appropriate.

Third, invoking *Brinker*, McCowen notes "an employer may not undermine a formal policy of providing meal breaks by pressuring employees to perform their duties in ways that omit breaks." *Brinker*, 53 Cal. 4th at 1040. In light of this standard, McCowen argues common legal and factual questions exist given his allegations that Trimac imposes unrealistic scheduling requirements, fails to schedule meal breaks, fails to notify drivers when breaks should be taken, fails to confirm whether breaks are taken, fails to confirm whether breaks are actually being provided, and authorizes non-compliant breaks. Among other questions McCowen insists will dominate the case are whether Trimac failed to provide premium pay when meal breaks were not taken, whether Trimac's corporate policies inhibited the taking of breaks, and whether Trimac's actual meal and rest break policy is lawful under *Brinker*.

Ultimately, McCowen has met his burden under Rule 23(a)(2). As *Brinker* points out,

"[t]he wage orders and governing statute do not countenance an employer's exerting coercion against the taking of, creating incentives to forgo, or otherwise encouraging the skipping of legally protected breaks." *Brinker*, 53 Cal. 4th at 1040.  Here, common legal and factual questions exist regarding the extent to which Trimac engaged in such conduct.  If Trimac's drivers are provided breaks only on paper because the cumulative burden of the company's actual practices undermines the taking of breaks, then Trimac will be liable to its hazmat drivers on a class-wide basis. McCowen also submits substantial evidence demonstrating this question is susceptible to common proof.  Among other things, McCowen offers evidence that Trimac never attempted to schedule breaks for its drivers despite having the ability to do so through the Qualcomm computer system installed in all of the trucks. *See, e.g.*, Jacobs Decl. ¶ 8; McCowen Decl. ¶ 6.  Drivers also apparently are subject to discipline for failing to take or voluntarily waive their breaks, suggesting they may feel compelled to report missed breaks as taken in order to avoid the consequences. *See, e.g.*, Fetters Decl. ¶ 7; McCowen Decl. ¶ 7; Bringle Dep. at 108:8–17.  Finally, McCowen asserts Trimac made no effort to relieve its drivers of various company-wide expectations that in practice subjected them to significant pressure to forego breaks. *See, e.g.*, Sabilino Decl. ¶ 8; Fetters Decl. ¶ 5–6. Formal adjudication of the merits of McCowen's claims is not presently appropriate, but he raises common legal and factual questions sufficient to satisfy Rule 23(a)(2).

### c. Derivative Claims

McCowen identifies a number of legal and factual issues common to each class member's derivative claims, including whether Trimac has "fail[ed] to provide itemized wage statements conforming to Labor Code Section 226," "whether Trimac is liable for Labor Code Section 203 waiting time penalties," whether Trimac violated the UCL by not complying with the Labor Code, and whether Trimac is liable for penalties under PAGA for some or all of its pay practices. Mot. for Class Cert. at 12:19–26.  Trimac does not contest that commonality is met with respect to these claims.  Thus, because McCowen identifies common legal and factual issues that would resolve the derivative claims, Rule 23(a)(2)'s requirements are accordingly met.

### 3. Typicality

1	The representative plaintiffs' claims must also be typical of those advanced by the class.
2	Fed. R. Civ. P. 23(a)(3).  Admittedly, the "[t]he commonality and typicality requirements of Rule
3	23(a) tend to merge." *Gen. Tel. Co. of Sw. v. Falcon*, 457 U.S. 147, 157–158 n. 13 (1982).
4	Typicality, however, like adequacy, is directed to ensuring that plaintiffs are proper parties to
5	proceed with the suit.  The test is "whether other members have the same or similar injury,
6	whether the action is based on conduct which is not unique to the named plaintiffs, and whether
7	other class members have been injured by the same course of conduct." *Id.* (quoting *Schwartz v.
8	Harp*, 108 F.R.D. 279, 282 (C.D. Cal. 1985)). That said, "[t]ypicality refers to the nature of the
9	claim or defense of the class representative," and less so, "the specific facts from which it arose or
10	the relief sought." *Hanon v. Dataproducts Corp.*, 976 F.2d 497, 508 (9th Cir. 1992) (quoting
11	*Weinberger v. Thornton,* 114 F.R.D. 599, 603 (S.D. Cal. 1986)). "Under the rule's permissive
12	standards, representative claims are 'typical' if they are *reasonably co-extensive* with those of
13	absent class members; they need not be substantially identical." *Hanlon*, 150 F.3d at 1020
14	(emphasis added).

15	Here, McCowen is a California-based local, solo, intrastate driver who has worked for
16	Trimac throughout the class period.  As such, McCowen asserts his injuries are identical to those
17	of the class, as they stem from an identical course of corporate conduct.  McCowen also contends
18	his claims are not subject to any unique defenses, and that by pursuing his personal interests in this
19	litigation he advances the interests of the putative class.  Trimac does not dispute the wage claims
20	or derivative claims are typical of the class, and the record suggests McCowen's claims are
21	reasonably co-extensive because he was employed by Trimac throughout the relevant periods.
22	Accordingly, Rule 23(a)(3)'s requirements are met with respect to the wage and derivative claims.

23	Trimac does, however, contest the typicality of McCowen's meal and rest break claims.
24	Trimac's argument is that McCowen fails to demonstrate a policy or practice of missed meal
25	breaks, and the typical class member, according to Trimac's view of the record, regularly took

1 their meal and rest breaks.[10] McCowen, by contrast, not only was counseled repeatedly about taking the requisite breaks, but marked routinely on his Break Certification Forms that he voluntarily opted out of them.  McCowen responds there was system-wide non-compliance with the meal and rest break documentation requirements, and he insists the counseling does not render him atypical because it was a standard component of Trimac's policy.

Ultimately, Trimac's assertion that McCowen's claims lack typicality is without merit. Although McCowen required counseling about his break documentation, the record suggests he is nevertheless similarly situated to the other putative class members.  Typicality is focused, moreover, on the nature of the class representative's claims, and less so on the facts giving rise to them.  Here, the claim that McCowen was denied meal and rest breaks is reasonably coextensive with the claims of the class.  Rule 23(a)(3)'s requirements are accordingly met.

### 4. Adequacy of Representation

Under Rule 23(a), the named plaintiffs must be deemed capable of adequately representing the interests of the entire class, including absent class members. *See* Fed. R. Civ. P. 23(a)(4) (requiring "representative parties [who] will fairly and adequately protect the interests of the class"). The adequacy inquiry turns on: (1) whether the named plaintiff and class counsel have any conflicts of interest with other class members; and (2) whether the representative plaintiff and class counsel can vigorously prosecute the action on behalf of the class. *See Ellis v. Costco Wholesale Corp.*, 657 F.3d 970, 985 (9th Cir. 2011).  In practice, courts have interpreted this test to encompass a number of factors, including "the qualifications of counsel for the representatives, an absence of antagonism, a sharing of interests between representatives and absentees, and the unlikelihood that the suit is collusive." *Brown v. Ticor Title Ins.*, 982 F.2d 386, 390 (9th Cir. 1992) (quoting *In re N. Dist. of Cal. Dalkon Shield IUD Prods. Liab. Litig.*, 693 F.2d 847, 855 (9th Cir. 1982)).

---

[10] As McCowen's counsel pointed out during oral argument, however, the documentation reflects that McCowen, Fetters, and Jacobs repeatedly missed meal and rest breaks.  *See* Bringle Decl. Exs. 7–9.

Here, McCowen asserts his personal claims are identical to the claims of the class, and insists he has no conflicts of interest with putative class members. McCowen also has retained counsel qualified sufficiently to ensure vigorous prosecution of this litigation. Trimac does not dispute any facet of these contentions, *See* Opp'n at 12:15–17, and the record does not provide any basis to doubt the competency of counsel. Accordingly, the adequacy requirement of Rule 23(a)(4) is met.

**B. Rule 23(b)(3) Requirements**

**1. Predominance**

Rule 23(b)(3) requires that "questions of law or fact common to class members *predominate* over any questions affecting only individual members." Fed. R. Civ. P. 23(b)(3) (emphasis added). The analysis "presumes that the existence of common issues of fact or law have been established pursuant to Rule 23(a)(2)." *Hanlon*, 150 F.3d at 1022. Thus, the predominance analysis "focuses on 'the relationship between the common and individual issues' in the case and 'tests whether proposed classes are sufficiently cohesive to warrant adjudication by representation.'" *Wang v. Chinese Daily News, Inc.*, 737 F.3d 538, 545 (9th Cir. 2013) (quoting *Hanlon*, 150 F.3d at 1022). The main concern is "the balance between individual and common issues." *Id.* at 546 (quotation marks and citation omitted).

**a. Wage Claims**

McCowen asserts a single common question lies at the core of his wage claims: "whether Trimac's ABP compensation system, which built[] pay for certain non-driving tasks into the mileage rate[,] violated California law." Mot. for Class Cert. at 14:25–15:1. On that point, McCowen notes California law requires that employers pay employees at least the minimum wage for all "hours worked," *see generally Morillion v. Royal Packing Co.*, 22 Cal. 4th 575 (2000), which includes "the time during which an employee is under the control of an employer and . . . the time the employee is suffered or permitted to work, whether or not required to do so," Wage Order 9-2001. McCowen observes the ABP system did not compensate separately either for "non-productive" time or miles in excess of the mileage brackets. Trimac also admits the activities

raised in this action were part of the drivers' duties.  Accordingly, McCowen demonstrates sufficiently that class-wide legal questions predominate because the legality of the ABP system, which applied uniformly to drivers, lies at the foundation of each of the wage claims.

### b. Meal and Rest Break Claims

McCowen asserts that beyond taking steps to show its drivers are provided breaks on paper, Trimac has done nothing either to relieve its employees of all duty or permit them a reasonable opportunity to take an uninterrupted break.  The common question that lies at the core of these claims then is whether, despite Trimac's formally compliant policy, the company's actual practices robbed drivers of the ability to take breaks.

Trimac contends that when an employer's written meal and rest break policy is legally compliant, conflicting evidence regarding the existence of a "policy to violate the policy" means the alleged counter-policy does not have uniform application sufficient to meet the predominance requirement.  Trimac submits the evidence is conflicting on the same bases articulated above.

McCowen disputes that the evidence in the record is conflicting in any way and insists common legal and factual issues predominate over individual issues.  McCowen specifically highlights certain company-wide practices that allegedly give rise to liability, including Trimac's failure to notify drivers through on board equipment when breaks should be taken, failure to confirm whether meal breaks are actually being provided, failure to pay premiums when breaks are not provided, imposition of discipline on drivers who fail to take or waive breaks, and Trimac's imposition of unrealistic scheduling requirements upon its drivers.

McCowen's argument that common issues predominate is more persuasive.  The policies and practices McCowen targets appear to have applied company-wide.  Trimac may be right that McCowen will not ultimately prove the "counter-policies" alleged, but that is not the present question.  For now, McCowen demonstrates sufficiently that such class-wide issues predominate over individualized issues.  This aspect of Rule 23(b)(3) is accordingly met.

### c. Derivative Claims

McCowen contends that common issues predominate with respect to his derivative claims

1   because if Trimac violated either the Labor Code or the unfair competition law, its unlawful

2   conduct will have been the same as to all drivers in the putative class.  Trimac does not quarrel

3   with McCowen to the extent the derivative claims are based on the wage claims, but Trimac does

4   contest that common issues predominate to the extent the derivative claims are based on the meal

5   and rest break claims.  As noted above, common issues *do* predominate with respect to the meal

6   and rest break claims.  Trimac's argument is correspondingly wide of the mark.  This facet of Rule

7   23(b)(3) is met.

### 2. Superiority

Rule 23(b)(3) also requires that class resolution be "superior to other available methods for the fair and efficient adjudication of the controversy."  The rule sets forth four factors to guide this determination: "the class members' interests in individually controlling the prosecution or defense of separate actions"; "the extent and nature of any litigation concerning the controversy already begun by or against class members"; "the desirability or undesirability of concentrating the litigation of the claims in the particular forum"; and "the likely difficulties in managing a class action." Fed. R. Civ. P. Rule 23(b)(3)(A)–(D).  "[C]onsideration of these factors requires the court to focus on the efficiency and economy elements of the class action so that cases allowed under subdivision (b)(3) are those that can be adjudicated most profitably on a representative basis." *Zinser v. Accufix Res. Inst., Inc.*, 253 F.3d 1180, 1190 (9th Cir. 2001) (quotation marks and citation omitted).

McCowen submits that each of the factors weighs in favor of certification.  First, class treatment is superior in McCowen's eyes because the individual damages at issue are not large.  Each class member, that is, seeks compensation for portions of days or hours for which no pay was separately allocated or meal and rest breaks were not provided.  In the absence of class treatment, these damages are not likely to be recovered because few potential class members would be able to afford individual litigation.  Second, McCowen submits there are no other individual actions alleging the claims in this case, so there is no risk of wasting judicial resources by certifying a class action.  Third, McCowen asserts certification is desirable because liability

turns on Trimac's company-wide policies. Finally, McCowen contends that management of the class action would not be so problematic as to preclude class treatment.

Trimac counters that class treatment is unwarranted on the sole basis that the record belies drivers uniformly were denied meal and rest breaks. Trimac suggests it would be more appropriate to investigate each putative class member's claims individually.

McCowen once again has the more persuasive argument. Given the legal theories and evidence, class treatment is likely to reduce litigation costs and promote efficiency relative to trying each case individually. As such, Rule 23(b)(3)'s requirement that class resolution be superior is accordingly met.

## V. CONCLUSION

McCowen's motion for class certification is granted. The "wage claims," "meal and rest break claims," and "derivative claims" are suitable for class treatment. The four subclasses advanced by McCowen will also be certified. McCowen shall be appointed class representative, and Marlin & Saltzman, LLP, shall be appointed class counsel. The parties shall meet and confer regarding the class notices and jointly submit agreed upon proposals no later than 30 days from the date of this order.

Additionally, in accordance with the stipulated protective order, McCowen filed under seal a portion of his initial brief and three documents marked "confidential" by defendant Trimac. In contravention of the local rules, Trimac did not respond. *See* Civ. Local Rule. 79–5(e)(1) ("Within 4 days of the filing of the Administrative Motion to File Under Seal, the Designating Party must file a declaration as required by subsection 79-5(d)(1)(A) establishing that all of the designated material is sealable."). Accordingly, the administrative motion to file under seal will be denied without prejudice. McCowen, however, shall file his brief and the documents in the public record no earlier than January 11, 2016. Should Trimac wish for this material to remain confidential, it may file the appropriate declaration on or before January 4, 2016. Upon a showing of good cause, the public docketing will be postponed.

1  **IT IS SO ORDERED**.

3  Dated: December 22, 2015

_____
RICHARD SEEBORG
United States District Judge